JAMES W. BAKER V. THE STATE.

No. 16023.   Delivered May 31, 1933.
Rehearing Denied June 23, 1933.
Reported in 62 S. W. (2d) 132.

The opinion states the case.

*Vickers & Campbell,* of Lubbock, for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

CALHOUN, JUDGE.—The offense is accomplice to highway robbery; punishment, 20 years in the penitentiary.

The testimony shows that on the 27th day of May, 1932, the bank at Seagraves, Texas, was robbed. About 12:30 on said date a Miss Lora Brown, who was assistant cashier and bookkeeper, was the sole person in charge of the bank. She testified that one Jodie Edwards, alleged in the indictment to be the principal offender, on that day came in the bank and with a drawn pistol held up and robbed her. One Meredith,

who the state contends was a party to the crime, was also present. The robber required Meredith and Miss Brown to go into the vault. The safe inside the vault had been left unlocked and the said Edwards required Meredith to take the money, which amounted to something like $3,200.00, and put it in a sack. The robber then escaped. The testimony further showed that just a short time prior to the robbery the appellant had been in the bank and had left about the time Meredith came into the bank. Part of the state's testimony connecting the appellant with the robbery depended upon a confession made orally to the sheriff and while the appellant was confined in jail and under arrest.

The appellant testifying in his own behalf admitted that he had been approached on the proposition to participate in the robbery by one Herring, who the state contends was the person who instigated the crime. He testified that several conversations took place with Herring about the matter and that he was introduced by Herring to Edwards and the parties agreed that the robbery should be affected the next day. He objected to this and wanted to put it off a week. He also testified that his part of the transaction was to be in the bank for the purpost of failing to identify Edwards in the event anything should go wrong. That he wanted to be left out of it, but Edwards threatened him; that he had heard the conversations and knew the parties and it was too late for him to get out of it. He denied that the had ever encouraged Edwards to commit the crime. His whole defense was that after having come into the matter and entered into the agreement he wavered and did not carry out his part of the plot. He admitted that he used his car to carry Edwards, the robber, out of the county and admitted that he was given $470.00 of the money.

Two bills of exception appear in the record, which complain of the receipt in evidence of the confession on the part of the appellant made to the sheriff and which connected the appellant directly with the crime. There is also a bill of exception reserved to the court permitting the state, to cross-examine the appellant, while a witness in his own behalf, in regard to said alleged confession. In regard to said alleged confession, the sheriff, one Telford, testified as follows: While the appellant was in jail, during a conversation with the said sheriff, the appellant said to him, "If you were in my place, what would you do?" and he replied, "I do not know"; that the appellant then asked him what would the sheriff advise him to do and he then replied, "I do not know, I might advise you wrong," and

he said, "If you do, it will be all right," or "I do not have to take it," or something like that. The sheriff then told the appellant that if he were in the appellant's place and he was guilty of the crime he would get all of the money that the appellant had gotten out of the deal, turn it into the court, and tell them what he did. After some further talk the appellant told him to come back on the next day, which was Sunday, and when the sheriff came back on Sunday morning the appellant was dressed and said he was ready to go. The sheriff further testified that he then took a trip with the appellant and the purpose of that trip was to get the money that the appellant told him he had gotten out of the Seagraves money. They found some money on that trip and the appellant told him said money was his part out of the Seagraves bank robbery.

We are of the opinion that the confession, although the appellant was under arrest, was admissible, though secured by persuasion, under article 727, C. C. P., because part of the fruits of the crime were discovered from the confession made by the appellant. See, also, section 97, 18 Tex. Juris.; Webb et al. v. State, 102 Texas Crim. Rep., 360; Singleton v. State, 87 Texas Crim. Rep., 302; Hilliard v. State, 87 Texas Crim. Rep., 416, 222 S. W., 553.

There are a number of exceptions taken to the court's charge. The court qualified said exceptions to the effect that the court's charge as originally prepared was changed in response to appellant's written objections and no further written objections were filed thereto. In the case of Kincaid v. State, 10 S. W. (2d) 725, Judge Hawkins, speaking for the court, used the following language: "Where instructions are changed in response to written objections and the accused is not satisfied with the change, he should file further 'written' objections. Hall v. State, 97 Texas Crim. Rep., 158, 260 S. W., 878; Jackson v. State, 103 Texas Crim. Rep., 252, 280 S. W., 808; Butler v. State, 105 Texas Crim. Rep., 228, 288 S. W., 218; Martin v. State, 107 Texas Crim. Rep., 46, 294 S. W., 595. In the absence of further written objections the trial court would have the right to assume that accused was satisfied with the alterations in the instructions, and objections presented for the first time in a bill of exception filed long after the trial cannot be considered under the statute. Articles 658, 660, C. C. P." See, also, section 50, 4 Tex. Jurisprudence.

The court gave a concise, and as we view it correct, charge presenting all the issues involved in the case. We believe the evidence as a whole is sufficient to support the conviction.

Finding no reversible error in the record, the judgment is affirmed.

*Affirmed.*

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.

### ON MOTION FOR REHEARING.

LATTIMORE, JUDGE.—Appellant files a vigorous motion for rehearing, complaining chiefly because we declined to consider his exceptions to the court's charge; it appearing that after such exceptions had been presented, the trial court made some changes in his charge and wrote on the paper containing said exceptions that he had "corrected his charge to meet said exceptions," but did not state in any sort of detail what changes were made—nor are we able to ascertain from said document whether appellant was apprised of the changes, or thereafter given an opportunity to prepare such additional exceptions, if any he desired, to conform to the supposed requirements of article 660, C. C. P.

We have tried to construe the 1913 amendment to our law regarding charges, which embraces what are now articles 658, 659 and 660, C. C. P., with due regard to the rights of both the state and the accused. The trial court is to be apprised by objections to his charge in writing distinctly specifying each ground of objection, seasonably presented, after such charge has been prepared and submitted to counsel for the accused. (Article 658.) We consider objections to such charge not so made as waived. If upon consideration of such objections when presented, the trial court makes changes in the charge, he should again submit such charge to counsel for the accused, who should have reasonable time to examine same and present in writing his objections to said charge as changed, he again distinctly specifying each ground of objection. (Article 660.)

We have not meant to say in any case that exceptions to parts of the charge which have not been changed,—would not be considered when brought forward on appeal, even though same appear to be those exceptions first presented to said unchanged parts of the charge, but article 660, C. C. P., points out what should be the procedure in case the charge be changed, and says as follows: "The defendant or his counsel shall have the opportunity to present their objections thereto and in the same manner as is prescribed in article 658." This would seem to mean that upon examination of the changed charge, objections and

exceptions, if desired, should be presented *to those parts of the charge which have been changed,* and if there be no such objections or exceptions found in the record to the changed parts of the charge, this court will proceed on the theory that same have been made acceptable to the accused and his counsel. If the trial court does not change parts of his charge to which specific exceptions have been taken, and these exceptions, with or without other exceptions to the changed portions, be brought before us, we should consider same. In the case before us we can not tell from an inspection of the record in some instances whether the charge was changed or not after the objections in writing were presented. Nothing calls our attention to any specific objection to meet which indicated changes were made in the charge, as was the case in Kincaid v. State, 111 Texas Crim. Rep., 1, and Shipp v. State, 117 Texas Crim. Rep., 597, and others. There appears in the closing paragraph of the writing covering some 17 pages of the transcript, styled "Objections and Exceptions to the Main Charge," the statement that: "Such objections and exceptions were submitted by the defendant's attorneys to the court and the district attorney for inspection and consideration within a reasonable time after receipt of the main charge, and are, by the court, *after correcting his charge to meet such exceptions,* denied and overruled, to which action of the court the defendant then and there in open court excepted, and is hereby allowed his bill of exceptions to the action of the court in the premises." This is approved by the trial court, and was filed the same day as was the court's charge. We cannot tell from this whether appellant was excepting to the changes made in the charge or to the court's statement that he had changed his charge "to meet the exceptions," or to the court's "denial and overruling" of his objections and exceptions. We cannot tell therefrom what changes were made, or that any particular paragraph was in fact changed in the final charge.

We consider appellant's exceptions to the charge. Complaints 1 and 2 are of the failure of the court to instruct an acquittal. There is nothing in this. No. 3 sets up that the charge on circumstantial evidence is not correct, but points out no wrong, and is not specific, nor was any special charge asked setting out the law correctly. Nos. 4, 5 and 6 complain of what is termed an "incorrect" summarizing of the second count in the indictment in the beginning of the charge relative thereto. The court's charge appears to us to have correctly stated the

offense against appellant as set out in the second count of the indictment. The exceptions are not at all specific.

Paragraph five of the court's charge was a general definition of who is an accomplice. Exception No. 7 was aimed at same because it did not state to whom the aid, advice, etc., should be given. This seems of no avail. In the sixth paragraph of his charge the trial court told the jury that if they found from the evidence, beyond a reasonable doubt, that Edwards, named in the indictment as principal, made an assault on Brown, and put her in fear of life, etc., and by said assault and by the use of a firearm fraudulently took from her certain property in her possession, and that prior thereto Baker, appellant herein, unlawfully and wilfully advised, commanded, or encouraged said Edwards to commit said offense, and was not present when same was committed, to find Baker guilty as an accomplice. We have not undertaken to copy all of the details. Appellant's exception to this covers nearly two pages of the transcript and embraces nine grounds. We notice some of these. Venue of the case was properly laid in Gaines county where the robbery was committed, even though the main consultation between appellant and Edwards was in Terry county. Carlisle v. State, 31 Texas Crim. Rep., 537; Dent v. State, 43 Texas Crim. Rep., 126; Carbough v. State, 49 Texas Crim. Rep., 456; Martin v. State, 82 Texas Crim. Rep., 200. These cases lay down the rule that the accomplice may be prosecuted in the county where the crime advised, aided, etc., is actually committed. This matter, complained of in a number or other exceptions, will not be further discussed. We find nothing in said paragraph which is on the weight of the evidence, or assumes that any money had been taken from Lora Brown, or that such money belonged to her, or that it was taken without her consent. Each of the elements of the offense charged was properly set out in said paragraph. Nor is there assumption that Edwards had committed the crime of robbery.

Paragraph eight of the charge told the jury that they could not consider the purported oral confession of appellant to the sheriff, if considered at all, unless they believed from the evidence beyond a reasonable doubt that in connection with said confession appellant produced and delivered to the sheriff a part of the money taken by Edwards by robbery from Lora Brown on May 27th, etc., and if they had a reasonable doubt of this to acquit appellant. We fail to see how this was on the weight of the evidence, or shifted the burden of proof, or is an assumption that appellant made a confession, or was too re-

strictive, or was improper for not stating the law as to warning, etc. - As we understand the law, if as a result of or in connection with the alleged confession the fruits of the crime are discovered, or the instrument with which a crime is committed, the question of warning does not enter into the case. Appellant as a witness admitted that he got part of the money which was taken from Lora Brown by Edwards, and that afterwards he went with the sheriff to two places, in each of which was concealed a part of said money, and that he dug up the jar in which part of it was hidden and gave it to the sheriff; also, that he produced from a slit in the tray of his trunk the remainder of said money and gave it to the sheriff. The sheriff testified that on the way down to where this money was found and gotten from appellant, the latter told him that he had met with Edwards and others whom he named; that they all agreed to rob the Seagraves bank, and appellant's part in it, as agreed upon, was outlined to the sheriff. Appellant was to be in the bank when it was robbed, and if Edwards was caught after the robbery appellant was to refuse to identify him. The sheriff further testified that appellant told him that he went to the bank a few minutes before Edwards was to come in, but his legs would not let him stay and carried him out. Lora Brown testified that appellant was in fact in the bank a few minutes before Edwards came in and the robbery was committed.

Another exception urged that there was no evidence to show that the money taken belonged to Lora Brown, or that the money recovered from appellant was part of that taken from her by Edwards. Lora Brown testified that she was assistant cashier of the bank, and was the only officer in the bank at the time of the robbery, and that in the absence of the cashier she conducted the business of the bank. Appellant himself amply supplied all the testimony necessary to show that the money turned over to the sheriff was part of that taken by Edwards. He swore he was given $470.00 of said money, and delivered same to the sheriff.

There are some exceptions to the charge as a whole because of the complicity of the cashier of said bank. He was not a witness, nor do we find a word of testimony exonerative of appellant based on any such idea, and wholly fail to see any substance in such exception. If in fact it had been proved that said cashier had agreed prior to the robbery that Edwards was to hold up the assistant cashier and take from her possession the money of the bank, this might have made the cashier an accomplice, but, it would afford appellant no escape from the consequences of his acts.

There is an exception to the failure of the court to submit the issue of appellant's withdrawal from the plot to rob the bank. An inspection of the charges shows that such issue was submitted. There is an exception to the failure of the court to single out the fact of appellant's receipt of $470 from two of his alleged confederates, which he claimed on the witness stand that they gave him for services rendered in helping Edwards make his escape from the vicinity. Appellant seems to think the court ought to have told the jury, in substance, that if he got it for that purpose, or if they had a reasonable doubt thereof, then he could not be convicted as an accomplice "because of such fact, nor should same even be considered as a circumstance of guilt against him as such an accomplice." This would have been clearly erroneous and on the weight of the evidence if the court had so instructed the jury. This would also be true of the exception taken to the charge because it failed to tell the jury that they could not convict appellant on his statement to the sheriff, even though part of the stolen property was recovered as a result of or in connection therewith.

Under our law it is not necessary in order to determine the guilt of a coconspirator, or of one indicted as an accomplice, that it be proved that the crime was agreed upon in all of its details, nor that the exact offense was committed that was had in contemplation. See article 71, P. C. There is nothing in the exception to this charge, that it did not require the jury to believe that appellant, to be guilty in this case, must have specifically aided or advised or commanded Edwards to commit the offense of robbery.

Appellant as a witness admitted that he had discussed with Herring, a codefendant and coconspirator from the state's standpoint, on more than one occasion the robbery of said bank before he went with Herring to Slaughter's place where he first met Edwards, who was to be the actual perpetrator of the robbery, at which time, according to appellant, he told said parties he was not going on with them in the projected hold up. There is nothing in the record to support the theory that he was a mere bystander, or was present and taking no part, and that he had not advised, etc. Appellant's own claim was that after going along with the others up to the last meeting, at which all the conspirators were present, on the morning of the day of the alleged robbery, he then told them to count him out, that he "wouldn't be there when that fellow comes in." The exception to the court's charge for failing to submit the issue of appellant being merely present, or of his inactivity, or

his failure to inform the officers, seems to fall for want of sufficient testimony to support it.

We further find no support for the exception to paragraph nine of the charge which told the jury that even though they found that Edwards committed the robbery, and that before it was committed appellant advised, encouraged, etc., him to commit such offense, if he did, still if they believed or had a reasonable doubt as to whether appellant, before Edwards committed said offense, changed his mind and determined to abandon his intention to engage in such crime, if any, and advised said Edwards thereof, then and in that event appellant would not be guilty and should be acquitted. We shall advert to this proposition again. We do not think there existed any likelihood of appellant being convicted as an accomplice because of his testimony admitting what he says he did after said robbery.

There is an exception based on the proposition that appellant, if guilty at all, was guilty as a principal offender. Of course if appellant had been in the bank at the time of the robbery as was the original plan, or had been engaged at the time of the robbery in doing some part assigned to him in the execution of said scheme, or in aid thereof, he would have been a principal; but there is no testimony save his own as to where he really was, or what he was actually doing when the hold-up was effected. We cannot agree with appellant in this contention.

There is an exception to the refusal of the court to submit the case on the law of circumstantial evidence. The court did submit the case on the law of circumstantial evidence, in the doing of which we think he gave to appellant more than he was entitled to. The court below evidently took from the charge the words made the subject of appellant's exception twenty-nine, as said language complained of does not appear in the paragraph referred to. We do not find anything calling for discussion of exceptions 30, 31, 32 and 33.

Exception 34 complains of paragraph nine of the charge, in that it required the jury to believe that appellant must have notified Edwards of his change of mind, if he had one, in regard to taking part in the robbery, before he could ask an acquittal on the ground of abandonment of the enterprise. The substantive offense of being an accomplice to crime, is complete before the crime contemplated has been committed. If it be proved that appellant conspired or aided, advised, or encouraged Edwards, but later changed his mind, we see no error in the charge as against the rights of appellant. The proposition that after one has done the thing which makes him guilty

(advising, encouraging, planning, aiding, etc. in this case) and the offense planned has been committed, he can escape the consequence of his acts by changing his mind, his attitude, and should go unpunished by telling his confederates that he will not become a principal by being present, is somewhat novel to say the least. Without discussing the propriety of what the court did say, we think he gave appellant all and probably more than he was entitled to in said charge.

We have considered each and all of the other matters set up in appellant's motion for rehearing, and are of opinion that the original affirmance was the disposition that should have been made of the case.

The motion for rehearing is overruled.

*Overruled.*